JOHN L. BROWN, as EXECUTOR, AND HANNAH E. BROWN, as EXECUTRIX, ETC., OF JOHN L. BROWN, DECEASED, APPELLANTS, v. THE MAYOR, ETC., OF THE CITY OF NEW YORK, RESPONDENT.

11h 21
63ad410

*Lien of attorney for costs — how determined — when it attaches — Equitable assignment — Compensation for attorney's services — may be determined by reference — Cross-examination — duty of party to produce witness for.*

The lien of an attorney, and his rights, under an equitable assignment for the payment of his costs and compensation, upon a judgment recovered by his client, may be heard and determined upon a petition and reference.

But until a judgment be recovered no lien arises.

Where several actions have been commenced by an attorney for the same client, a judgment in any one of such actions, is subject only to a lien for the amount which the attorney is entitled to receive for costs and compensation in the action in which the judgment was recovered.

A firm of attorneys, carrying on several actions for a client, presented a bill for services rendered; whereupon the client agreed that their "costs, fees and disbursements" in the several actions, together with the bill rendered, "should be retained by them, and paid out of the first moneys which should be collected or received from the city, they conducting the proceedings, meanwhile, without receiving payment," and the attorneys did accordingly conduct such proceedings. *Held,*

That the agreement constituted a valid, equitable assignment of so much of the first moneys collected as was necessary to satisfy the attorneys' claim;

That, as the amount of the compensation was not fixed, it must be understood to be whatever would be a fair and reasonable compensation for the services rendered;

That such amount might be determined upon a reference, ordered upon the petition of the attorney.

A witness, called by plaintiffs, was twice produced for cross-examination, and each time defendant declined to cross-examine him. *Held,* that plaintiff was under no obligation to produce him again, and that if defendant wish to examine him, by way of cross-examination or directly, he must subpœna him himself.

Appeal from an order confirming the report of a referee.

The reference was ordered to determine the extent of the lien of the attorneys of the plaintiffs' testator upon a judgment recovered in this action.

A number of other motions relating to this reference and the appeal from the order confirming the report, were considered and decided at the January term, the decision being reported in 16 Supreme Court Reports (9 Hun), 587.

Develin & Miller were the attorneys of John L. Brown, who was largely engaged as contractor in carrying on public works for the city. Very large amounts being due upon these contracts Develin & Miller were employed by him, in 1871, to recover the moneys due him from the city. Several suits were brought which were contested. In one, judgment was recovered, but appeals were taken. In 1873 the attorneys rendered a bill for $5,738.34. Brown was unable to pay then, but upon its rendition agreed with the attorneys that they, conducting the several suits without payment, should, out of the first moneys collected or received from the city, retain their costs, fees and disbursements. This suit was contested. Plaintiff was nonsuited at Circuit. The General Term affirmed the judgment entered on the nonsuit. The Court of Appeals reversed the judgment below.

After this decision a settlement was agreed upon and was about being consummated when an application was made, on the part of the attorneys, to prevent the payment of the moneys until their claim was adjusted. Upon that motion an order was made appointing Philo T. Ruggles referee to ascertain and determine what amount ought to be paid to plaintiffs' attorneys, and the sum of $25,000 was ordered to be retained by the defendants to satisfy such lien.

*Robt. L. Fowler*, for the appellants.

*H. H. Anderson*, for the respondent.

DAVIS, P. J. :

In an action between these same parties, lately decided, we held that the questions touching an attorney's lien, and his rights under an equitable assignment for the payment of his costs and compensation, might be heard and determined upon petition and reference, as was done in this case. That question is no longer an open one in this court. (*Rooney* v. *Second Av. R. R. Co.*, 18 N. Y., 368; *McGregor* v. *Comstock*, 28 id., 237; 3 id., 217; *Richardson* v. *R. R. Co.*, 7 Hun, 69; opinion of DAVIS, P. J., in *Brown* v. *The Mayor*, 9 Hun, 587.)

No objections were taken to any portion of the testimony of Devlin and Trull, who were called as witnesses on behalf of the claimants, on the ground of their incompetency to testify to transactions had with John L. Brown, the testator of the plaintiffs, in the above entitled action. Some parts of their testimony were, doubtless, obnoxious to such an objection, but by far the greater part was not. After the hearing before the referee was closed, motions were made by the appellants' counsel to strike out the whole of the testimony of each of these witnesses, on the ground of their incompetency to testify to communications and transactions had with the deceased. These motions were denied by the referee. His decision was correct for two reasons : First. The motions came too late, not having been made till after the hearing was closed. Second. The motions asked for too much. They should have pointed out the objectionable testimony, and not asked to have the whole of the

evidence stricken out because some portions of it were incompetent.

When the testimony of Mr. Devlin was closed on his own behalf, his cross-examination was reserved by the appellants. He was afterwards called again on behalf of the claimants, but was not then cross-examined.

It does not appear affirmatively in the evidence what afterwards took place, in respect of his production by the claimants for the purpose of cross-examination, but it does appear that after the appellants had taken the case, and called and examined some witnesses, they required that Mr. Devlin should be produced for cross-examination before they went further with their side of the case. The counsel for the claimants stated that Mr. Devlin had already been twice produced for cross-examination, and that the counsel who then appeared for appellants had declined to cross-examine him ; that he was then in ill health at Richfield Springs, about 300 miles from New York, and the counsel refused to produce him. The counsel for appellants stated that the claimants' counsel was mistaken about the waiver of cross-examination, and offered to postpone the hearing till Mr. Devlin could be produced on his return to town, to which the counsel for claimants replied that they had discharged their whole duty in the matter, and should not produce Mr. Devlin for cross-examination then or at any other time. The appellants' counsel refused to proceed with their case, and objected that they should not be required to go on till Mr. Devlin should be produced. The referee, in substance, overruled the objection, and held that the case should proceed. In his report, the referee states that Mr. Devlin had been twice produced for cross-examination, and that the counsel then present for appellants had declined to cross-examine him.

We must take this statement of the referee as true, because there is nothing in the papers before us to contradict it. The mere absence of a statement of the fact in the minutes does not have that effect. The exception based on the refusal to produce Mr. Devlin for cross-examination was properly overruled by the Special Term. Under the circumstances, as they are stated by the referee, the obligation to produce him had ceased, and it was the duty of the appellants, if they wished to examine him, either by way of cross-examination or directly, to subpoena and produce him themselves.

The law of this State in respect of the lien of an attorney for costs seems to be well settled. Aside from the specific lien on deeds, papers and valuables in his hands as attorney, and which may be held for any general indebtedness for services (the extent of which lien is not now under discussion), an attorney has a lien for his costs in an action prosecuted by him, upon the recovery of a judgment. This formerly extended only to the taxable costs which were the legal measure of his compensation, but under the Code, which authorizes express or implied agreements between attorney and client as to such compensation, it embraces any amount expressly or impliedly agreed upon, as well as such part of the taxable costs and disbursements as may belong to him. (*Rooney* v. *Second Av. R. R.*, 18 N. Y., 368; *Sherwood* v. *Buffalo and N. Y. R. R. Co.*, 12 How., 136; *Haight* v. *Holcomb*, 16 id., 173; *Pinder* v. *Morris*, 3 Caines, 165; *Bradt* v. *Koon*, 4 Cow., 416; *Howland* v. *Taylor*, 6 Hun, 237. *Bartle* v. *Gilman*, 18 N. Y., 260; *Moore* v. *Westervelt*, 3 Sanford, 762.) But until there be a recovery of judgment no lien arises. (*Pulver* v. *Harris*, 52 N. Y., 73; *Martin* v. *Hawks*, 15 Johns., 405; *Shank* v. *Shoemaker*, 18 N. Y., 489; *Foot* v. *Tewksbury*, 2 Vt., 97; 1 Wait's Actions and Defenses, 454.)

In *St. John* v. *Diefendorf* (12 Wend., 261), the question was, whether an attorney had a lien upon the damages recovered in a judgment to satisfy a demand against his client for costs in other suits, and the court held, as SAVAGE, Ch. J., tersely expressed it, that "there can be no lien upon what belongs to another, without possession."

In this case, the learned referee erred in holding that the claimants had any lien upon the moneys paid, or to be paid, on the settlement beyond the amount they were entitled to for their costs and compensation in the case in which they had recovered judgment. In one case, that is in the action upon the First avenue contract, it appears that the judgment had been recovered on the trial before a referee, which was reversed on appeal, and a new trial ordered, and that on such new trial a judgment for upwards of $35,000 was recovered, from which an appeal had been taken, and was pending when a compromise with the city was made. It is understood by us that that judgment was embraced in the compromise. If that be so, the claimants had a lien for their costs and compensation

upon so much of the moneys as were paid to effect the compromise of that judgment.

The referee has found that they were entitled to the amount of the costs as adjusted, and $5,000 for their compensation in that case. There was no conflicting evidence as to these amounts, and, on the assumption that the compromise included that judgment, there seems to be no good reason why the lien may not be upheld.

There was no attorney's lien, under the law, for services rendered in the Tenth avenue suit, because that case had never reached judgment against the defendant therein. The plaintiff was beaten at Special Term, and on the appeal to the General Term, but succeeded in reversing both judgments and obtaining an order for a new trial in the Court of Appeals, after which, and before any judgment, the compromise was made. No attorney's lien for costs existed under the authorities above cited. The same thing is true in respect of the account presented to Mr. Brown in 1873. The referee erred in holding that the claimant had any attorney's lien for the amount of that account. But the referee found, in regard to that account and the other claims, as follows :

" I do further find and report that, in addition to the lien of the said attorneys, there was a special promise and agreement made by said John L. Brown to and with the said Devlin and Miller, that their costs, fees and disbursements in the several matters testified to before me, including a bill of $5,738.34, should be retained by them and paid out of the first moneys which should be collected or received from the city, they conducting the proceedings meanwhile without receiving payment, and that they did conduct such proceedings." This finding was excepted to by the appellants, and such exception raises two questions : First. Whether the evidence in the case justified such finding ? Second. Whether the agreement, as found, is sufficient to operate as an equitable assignment, *pro tanto*, of the money paid, or to be paid, by the city on the settlement of the actions ? The evidence of the agreement was given wholly by the witness John Wetherell, who testified that he was a partner of John L. Brown in the contracts. In relation to the agreement, his testimony was as follows :

" Q. Do you recollect a bill being rendered by Devlin and Miller to Mr. Brown, some time in the year 1873 ? A. Yes, sir.

Q. Do you recollect the amount of it? A. I think it was about $6,000. Q. Did you, at Mr. Brown's request, see Devlin and Miller, after the rendition of that bill, and make any statements to them on the subject of its payment? A. Yes, sir; Mr. Brown and I conversed about the matter, and he asked me if I would step down town to Devlin and Miller; after consultation, at his request, I went down and saw Messrs. Devlin, Miller & Trull; I have forgotten which one of the partners I did see now; I stated to them that the first money that came in their bill should be paid, out of the first moneys that we received from the city. Q. Was any thing said to them, to your knowledge, with reference to Mr. Brown's money being tied up, or having any money to pay, excepting that which came from the city? A. Yes, sir; in conversation, I stated that all Mr. Brown's affairs were tied up, and there was no way of getting the money except that came from the city. Q. Was it stated to them that they had charge of all these suits and litigations, and when the money came in they could be paid for all their services out of it? A. Yes, sir; that was the direct conversation between me and Mr. Devlin and Miller with Mr. Brown, when I was present. Q. Did you hear Mr. Devlin's testimony? A. Yes, sir. Q. Were you cognizant of these various services? A. I was."

From this testimony, we think the referee could properly find an express agreement, that the account which had been presented to Brown should be paid out of the first moneys received from the city, and that the services of the claimants in all the suits and litigations should be paid out of the money when it came in. Those suits were then pending, and there seems never to to have been any thing paid for the services rendered in them. It was competent for Brown to have made an express written assignment of the moneys to be realized, to the extent necessary to pay for the services of the claimants in full. Had he done so, there could be no question, as between himself and them, as to their right to compensation out of the fund realized by the settlement; and, under the authorities, if he had made an agreement with his attorneys that they should have for their compensation a stipulated share of all moneys collected or received, that would, upon the recovery of judgment, have operated as an equitable assignment. (*Rooney* v. *Second Av.*

*R. R. Co.*, 18 N. Y., 368 ; *Ely* v. *Cooke*, 28 id., 365 ; *McGregor* v. *Comstock*, id., 237.)

In this case, the agreement did not fix the amount of compensation, but it must be understood as agreeing that whatever would be a fair and reasonable compensation should be so paid. The question arises between the attorneys and their client, and not between the claimants and the defendants in the actions, and therefore no question of notice of the attorneys' rights, which has been of grave importance in many of the cases, arises. The money paid by the defendants has been intercepted and arrested by the order of the court, to abide the decision of the question of the lien and equitable assignment. If the equitable assignment be established, we see no good reason why the court may not, as between the claimants and their client, determine in this proceeding what is the just and fair compensation which the client agreed should be paid out of these moneys, and enforce the equitable assignment to that extent. If no case precisely analogous in its facts can be found, yet the principle of many of the cases already cited uphold the enforcement of such an assignment. (See, also, *Marshall* v. *Meech*, 51 N. Y., 140; *Christie* v. *Sawyer*, 44 N. H., 298 ; *Jordan* v. *Gillen*, id., 424.)

The equitable assignment (except in regard to the bill which had been presented to Mr. Brown) depended for its amount upon proof of a *quantum meruit*. On that question, the only testimony was that of Mr. Devlin and Mr. Trull, and from their testimony the referee found, and the court at Special Term has also found, that the charges are, under all the circumstances, a fair and reasonable compensation. That the amount was not contested is no fault, certainly, of the claimants, and we do not feel at liberty to interfere with it.

It follows that the order of the Special Term appealed from should be affirmed.

Brady and Daniels, JJ., concurred.

Order affirmed.